and the Life Insurance Company, Mr. Pinney. Thank you, Your Honor. I'm in the Pleas of Court Mark Pinney here on behalf of the appellant Thomas Steele. I'd like to reserve three minutes for rebuttal. Granted. Your Honor, I think the quality of our case will depend significantly on how high a hurdle we will have to climb, if you will, in order to have this matter considered. Judge Kelly resolved this matter on an arbitrary and capricious standard. Did you waive the financial conflict issue here that would require us to apply a heightened standard? I don't think the heightened standard actually, in our view, can be applied on two bases. One, whether there were procedural anomalies in the matter that would allow the heightened standard to apply as well, and I think that's the Russell case. I ask you a question. Yes. Did you or did you not waive by failing to raise the financial conflict of interest issue before the district court? I believe so, Your Honor. I don't think it's... All right, so your approach here is limited to the procedural irregularities. That would be correct, yes. That's what I'm asking. Yes, I'm sorry about that. And again, as far as... So what were those procedural anomalies or irregularities? Very fair question, Your Honor. And I think if you look at the beginning of this process, you start to see the procedural anomalies which go through the entirety of the process. Mr. Steele was originally granted short-term disability benefits based on an attending physician's report from Dr. Gruner in September. Mr. Steele was granted those benefits for a 25-week period. On the same basis, on the same AP, excuse me, attending physician's report in December of that year, Mr. Steele is then denied those benefits. It's an Aetna form. It's a Boeing Aetna form that this attending physician's report is constituted of. And in this matter, Mr. Steele is both granted and denied on the same format and on the same information. And I would suggest to you that's the beginning of the procedural anomalies in this matter that would call for the heightened standard. What are at the beginning? What are the other procedural irregularities? If you look at Judge Kelly's opinion, Judge Kelly, basically the last page, talks about at each and every stage of this proceeding, Aetna denies the benefits of Mr. Steele. But if anything, Aetna allowed Mr. Steele to come back a number of times to try to make his case, and they didn't just peremptorily shut him off, did they? No, but on each and every occasion, Your Honor. They rule against him? Well, they rule against him, but on each and every occasion, they reject him by saying, you haven't provided us with objective evidence of your disability. So on each and every occasion, all four times Aetna rejects him, they say, you need objective evidence, you need objective evidence. And what Judge Kelly does, and again, he acknowledges that each time that Aetna does that, they're singing the wrong tune. Actually, when you read Judge Kelly's opinion, one almost thinks you're about to win until you get to the last paragraph. You know, I thought the same thing. And he mentions the term absolution. He believes that Dr. Schneider's opinion absolves Aetna of their culpability in this matter, even though the Aetna rejection letter… But is that necessarily a procedural irregularity? I mean, it seems to me, and I'm not going to try to argue your case for you, but it seems to me that if, and I emphasize if, the court was insisting, as Aetna may have been insisting, on objective evidence for a condition that is not susceptible to an abduction of objective evidence, then there is a requirement that is contrary even to some of our case law, and that you may not even need a heightened standard of review for that. Well, I certainly wouldn't argue against that, Your Honor. I think in this matter that… Let's assume that you don't show the procedural irregularities and that no heightened standard applies here. How do you win? How do you reverse this clue? I think that if you look at the totality, and we argue in the alternative in our brief, that if you look at the totality of these circumstances in the arbitrary and capricious realm, the question is whether or not there was selective use of evidence, or if it's not selective use of evidence, creating an improper barrier for us to have to overcome. And that improper barrier was? Asking for objective evidence of a fibromyalgic or complex regional pain syndrome condition. That is, you know, that is… I guess it's conceivable and… Climax is found to be, per se, inappropriate under the circumstances. The other thing that I would call to your attention, and I hope that Judge Kelly dug into this to any greater degree, is that hypothesizing that if you look at what Dr. Snyder said, as opposed to what Aetna wrote, Dr. Snyder, if you parse his opinion, does make mention of things that might lead you to believe that Mr. Steele has not, or his physicians haven't met his burden and that his physical condition is not as good. And those two things are the fact that he has undergone physical therapy, that he can drive, and that he can exercise. If you look at each of those things, taken completely out of context in this matter, with regard to the physical therapy, Mr. Steele had a discontinuity because he would vomit after each physical therapy session, that he had difficulty driving. So he said he could drive, but he had difficulty driving. And the exercise component was something that he did in the 80s. The other thing that Dr. Snyder hung his hat on was that Mr. Steele had not been seen supposedly from July of 2003 to August of 2004, when the records show, in fact, that Mr. Steele had been seen on seven occasions. I point those two things out because... We still have a minute. We need to stop the clock. Should we attempt to... Should we recess and attempt to either have this... Yes. I'm sorry to have you interrupted this discussion. That's okay. I'll remember it. The marvels of modern technology sometimes are less marvelous than we'd like. But we'll take a brief recess. Thank you. Please rise. Judge, it looks like we have him back. It was a very brief recess. Yeah, it was a long time. We have the screen, but we don't have the judge. Here he is. I went for help. What did you do down there? Nothing. All right. I just missed about 30 seconds of the argument. And I'll go back to it. I'll just rephrase it. All right. If we could put about 10 seconds back on the clock. In any event, we won't dock it again. There's no replay official, is there, Your Honor? No, we're it. We're it, unfortunately. Thank you. What I was saying, Judge Dowd, was that if you look at Dr. Snyder's report as the saving grace, he focuses on a couple of things that just aren't supported in the record. In fact, he focuses on Mr. Steele's ostensible capability of performing physical therapy, driving, and exercising, which are found in very brief discussions in Dr. Cummings' report, and which are all taken out of context. And additionally, he says that Mr. Steele had not been— there had been no mention of his physical incapabilities for a time frame from July of 2003 to August of 2004. And once again, the records show that Mr. Steele had, in fact, had seven different physician visits during those time frames. And the reason that I was emphasizing those things are those are the things that Judge Kelly looked at when he said that Dr. Snyder's opinion got Aetna over the hurdle and that Aetna's decision was not arbitrary and capricious. I think the focus in those particular limited items and omitting and ignoring, if you will, some important factors as far as the determination of fibromyalgia or CRPS, namely the identification of trigger points and the identification of trigger points with palpation, which are found in Dr. Gruner's report of March 3rd of 2004, would, in fact, Judge Smith, I think, take us into the realm of arbitrariness and capriciousness. And unless the panel has some further questions, I'll be seated. Judge Dowd, questions? No questions. We'll have you back in rebuttal. Good morning, Your Honors. May it please the Court. My name is Katherine Schilling. I'm the deputy defendant in this matter. We respectfully request that Your Honors affirm the judgment of the District Court. We believe the District Court's granting summary judgment in favor of the defendants was correct. I see that Your Honors are focused on the issue of the objective evidence. If Your Honors request, I'll focus my argument there. No, very well. You go as you'd like, and we'll ask questions. What standard do you think we should use? Well, I picked up on what Judge Smith had noted. I believe that plaintiff's counsel had sort of argued that the use of the notations to the objective evidence had gone to the standard of review as a procedural irregularity. I don't believe that that's, quote-unquote, a procedural irregularity, as the courts would use that term. I think it's very clear that an arbitrary and capricious standard of review would apply here. There's clearly no financial conflict of interest that would apply. There's also no other procedural irregularities. To the extent that notations were made to the need for objective evidence, that goes to the substantive decision, and I can address that. I think it's very clear under the case law that Aetna is not permitted to request objective evidence supporting a diagnosis of fibromyalgia because no objective test. But isn't that the clear import even of what Dr. Snyder eventually suggests? I mean, his conclusions that there are no objective evidence seems to be based on an assumption that there is a need for something. Isn't it? I respectfully disagree, especially with Dr. – I think – not with Dr. Snyder, especially. I think – well, I think there's a distinction. I think what the law allows for Aetna to request is – to request or to cite a failure to demonstrate is objective evidence to establish that the illness of fibromyalgia renders a person unable to work. Does that mean – concede that Mr. Steele had CRPS or fibromyalgia? What Dr. Snyder found was that the record – Snyder agreed with Steele's physicians that he had chronic pain syndrome. Absolutely. So I think Snyder agrees that he has a chronic pain syndrome. I think Snyder did not agree that he – the record supported CRPS. But Snyder agrees that he has a chronic pain syndrome, i.e., fibromyalgia, yes. All right. Is there objective testing that can demonstrate that? No. There's not. But there is objective evidence that can support that fibromyalgia renders a person unable to work. And there is case law – Who retained Dr. Snyder? Aetna. Aetna retained this physician who agrees with Steele's own physicians that he's got chronic pain syndrome for which there is no objective test to support and seems to suggest that there's a lack of objective testing here. Absolutely. But there is case law out there, both from the First Circuit and the Tenth Circuit, that very clearly states that although there is no objective testing to support the diagnosis of the illness of fibromyalgia, there is – and it is permissible for a claims administrator to request or to cite the failure to demonstrate objective evidence to support – to establish that the illness of fibromyalgia renders a person unable to work. It's a subtle distinction, but there's case law – and there's a Tenth Circuit case just from last week that is almost directly on point with what Dr. Snyder finds. In his conclusions, Dr. Snyder says in part, based on the medical data in the file and with a reasonable degree of medical certainty, no specific physical limitations would be supported. Is that a correct statement? Is that a – Is that a correct statement? No specific physical limitations would be supported based upon Dr. Snyder's own agreement with Steele's physicians that the guy has chronic pain syndrome. Correct, because under the plan – Is – Is that a correct statement? Yes, Your Honor. No physical limitations would be supported. Because under the plan, even though he has fibromyalgia, he still has to be disabled under the plan. He still – even though a person – just because he has the diagnosis of fibromyalgia, he still has to be disabled from working. It still has to render him unable to work. A diagnosis of fibromyalgia is one thing, but it has to render him unable to work, unable to perform his duties. All right, well, his physician, Dr. Esther High, I think diagnosed bilateral arm pain. Is that right? Correct. And said Steele had an inability to perform keyboarding for more than 15 to 120 minutes. That was – 60% of his – the job description that's a record indicates that 60% of Steele's day is spent at the computer. But that was Steele's own self-reported diagnosis. That wasn't Esther High's – that wasn't Dr. Esther High's analysis. That was what the plaintiff reported to his doctor. Dr. Gruner said in December – on December 19th of 2003 that Mr. Steele can't concentrate. Again, that's self-reporting. Is there any evidence that would contradict that finding? Self-reporting. So a physician should not rely upon any information provided by his patient that is not subject to some objective verification. That's the import of your argument, isn't it? Well, he can rely on it, but there has to be some kind of demonstrable objective evidence that he cannot perform his job functions. And that's the important – and if I could give you this Tenth Circuit case that just came out last week, I think for Your Honor's consideration it might be helpful just to give a broader understanding of – it's Morrell v. Williams Company Long-Term Disability Plan. It's 2007 Westlaw 431515 and it's Tenth Circuit, February 9th, 2007. I have copies if Your Honor would like me to hand them on to you. This citation is – That won't be necessary. Okay. But it is a very subtle distinction, but it is one that courts recognize. There's also a First Circuit case, Boardman v. Prudential Insurance Company 337F39, First Circuit, 2003. It recognizes the same distinction. Let's talk about what's meant even by objective findings or objective evidence. There's documentation by Dr. Esterheim of diffuse tenderness. Dr. Gruner has an observation, a diagnosis of diffuse tenderness to palpation consistent with multiple trigger points. What are those objective findings? Of the diagnosis of fibromyalgia, absolutely. And that's exactly why Dr. Snyder says, I agree, that he has fibromyalgia. It's why Dr. Snyder agrees that he has the diagnosis of fibromyalgia. But it's the same reason why many, many people work with this condition all the time. It's the same reason why perhaps Mr. Steele worked with this condition for 20 or 30 years. This is no malingerer. This is a guy who worked and worked with the condition for a long time and told his treating physician he wanted to get back to work. Absolutely. And it's very admirable. I agree. But this is why people have diagnoses of conditions all the time. And the diagnosis of the condition doesn't necessarily mean that you're disabled under a disability plan. It's a different thing to have a diagnosis and to be disabled from working because of that condition. Is there any other? I don't have any. Judge Dowd, a question? No, nothing further. Thank you. All right. Thank you. Okay. Thank you, Your Honor. Mr. Pinney, a rebuttal? Just by way of a brief rebuttal, if you are looking for an assessment of the condition, the credibility of Mr. Steele, you'll find in the notes of Dr. Esterhide from HUB that he had been his patient for a 20-year period. I think Judge Smith had pointed that out and that he had suffered these pains greatly and had shown great courage and words to that effect. So if this is coming down to somewhat of a credibility assessment or determination that maybe Dr. Snyder should have looked further, that's in those records as well. That's all I have. All right. We thank counsel very much. We will take the case under advisement.